KASIL JABIN, RESPONDENT, v. NATIONAL ACCIDENT SOCIETY OF NEW YORK, APPELLANT.—41 S. W. (2d) 874.

Kansas City Court of Appeals. May 4, 1931.

*Philip L. Levi* for respondent.

*W. H. H. Piatt* for appellant; *David I. White* of counsel.

BLAND, J.—This is an action in two counts, arising in a justice court, upon the health provisions of an accident and health policy of insurance. The case was tried before the court without the aid of a jury. There was a judgment in favor of the plaintiff in the sum of $446 and defendant has appealed. No declaration of law was asked or given nor was any finding of facts requested. Under the circumstances, if there is any substantial evidence to support the judgment it must be affirmed. [Kansas City v. Boyer, 202 Mo. 1086.]

The policy was issued on July 18, 1928. It provided for a sick indemnity at the rate of $200 per month should the insured be disabled and continuously confined within the house, and therein regularly and personally visited by a legally qualified physician at least once each seven days, by reason of illness that wholly and continuously disabled and prevented him from performing any and every duty pertaining to any business or occupation, and that was contracted and began after the policy had been maintained in continuous force for

thirty days from its date. The policy provided for the payment of a monthly premium of $9.20, and that:

"This policy will expire on the 18th day of August, 1928, at twelve o'clock noon, Eastern Standard time, but may be consecutively renewed from term to term, subject to all its conditions, by payment of the premium in addition."

It also provided that the insurance should cover only disability from sickness contracted after thirty days from its date and, then, only if the renewal premium had been paid on or prior to said last mentioned date and subsequent terminal dates, or, if the policy was permitted to lapse it should only cover sickness which commenced ten days after the policy had been reinstated by the payment of the premium.

The first count of the petition alleges that on or about the 18th day of July, 1928, defendant issued its policy of insurance to plaintiff whereby "in consideration of the monthly premium of nine and 20/100 dollars ($9.20), it promised to pay plaintiff a monthly illness indemnity of two hundred dollars ($200) against disability and sickness for such period of time as the insured shall be under the care of a legally qualified physician, and such sickness as is contracted and begins after this policy has been maintained in continuous force for thirty days from its date." The petition then quotes from the policy relative to the agreement to pay sick benefits after the policy had been in force thirty days. It then alleges:

"Plaintiff further states that on or about September 18, 1928, and while said policy was in full force and effect, plaintiff was disabled and continuously confined within the house. . . . That said illness was contracted and began after this policy had been maintained in continuous force for thirty days from its date; and that said illness continued and confined plaintiff to his house unable to perform any duties until October 20, 1928; that plaintiff has complied with all provisions and requirements in said policy on his part to be performed; that as a result of said illness, there is due him the sum of two hundred thirteen and 33/100 dollars ($213.33)."

The petition then alleges that defendant has refused to pay said sum although it had been demanded and that the refusal to pay was vexatious and without reasonable cause and prays judgment in the sum of $213.33 on the policy, $21.33 for vexatious refusal to pay and $50 attorney's fees, or a total of $284.66.

The second count of the petition contains allegations similar to those in the first count, except it asks for sick indemnity for a period commencing November 27, 1928, and ending on December 22, 1928, and prays for $166.65 indemnity, $16.66 for vexatious refusal to pay and $30 attorney's fees, or a total sum of $213.31. The petition then

ends up with a prayer for a judgment in the total sum of $497.97. The policy was attached as an exhibit to the petition filed in the justice court.

The facts show that plaintiff was ill within the terms of the policy during the times alleged in the petition; that he gave notice of his illness to defendant relative to both periods of sickness and made proofs of loss; that defendant refused to pay the claim founded upon the first period of disability on the ground that plaintiff failed to give written notice thereof within ten days after the beginning thereof, as provided by the policy, and that his illness did not begin within thirty days after its date. Defendant gave no reason for its failure to pay for the second period of disability.

It is insisted that the petition fails to state a cause of action for the reason that it alleges that the first disability started on September 18th, but does not allege that the policy was in force at that time by virtue of the payment of the monthly premiums, or that it had lapsed and had been reinstated ten days prior to the commencement of the illness or the disability. No doubt defendant intends this claim to be leveled at both counts for the allegations contained in both are substantially the same. There was no attack made upon the petition until the cause reached this court. It is admitted that the possession of the policy is presumptive evidence of the payment of the first premium. The petition alleges the amount of the monthly premium, that the policy was in full force and effect on the date of the commencement of the illness and that plaintiff complied with all of the provisions and requirements of the policy. For a petition in a justice court, if not in the circuit court, we think it sufficiently alleges a cause of action against defendant. [Terti v. American Ins. Co., 76 Mo. App. 42; Steinbruegge v. Prudential Ins. Co., 190 S. W. 1018; Goudie v. National Surety Co., 288 S. W. 369; Makos v. Bankers' Accident Ins. Co., 234 S. W. 369; Tebeau v. Ridge, 261 Mo. 547; Kern v. United Rys. Co. of St. L., 259 S. W. 821; Mayhew v. Mutual Life of Ill., 217 Mo. App. 429; Winn v. Ins. Co., 83 Mo. App. 123, 1261; Jones v. Underwriters, 78 Mo. App. 296.] [See, also, Cunningham v. Holzmark, et al., No. 17058, decided by this court but not yet reported; section 807, R. S. 1929; Pomeroy v. Fullerton, 113 Mo. 440.] This is true, although a consideration or payment of additional or renewal premiums is required by the policy, whether or not the general rule applies, that where it is shown that the policy is in the possession of the insured it will be presumed to be in full force and effect. [See Lafferty v. Casualty Co., 287 Mo. 555.] We have examined the cases cited by defendant and find that they do not sustain its contention. The case of Swift v. Ins. Co., 216 S. W. 935, does not support defendant. That case, if anything, is authority in

favor of plaintiff as it suggests that if the insurance is in writing, as here, a consideration will be presumed. It is unnecessary for us to say whether that case is authority for a holding in the case at bar that the petition alleges that any premium other than the first was paid. The fact that the policy provides that it may be continued in force merely by the payment of the renewal premium, without the making of anything in writing, at the time of the payment, concerning the renewal, does not, of course, make it an oral contract of insurance.

It is claimed that the petition fails to state a cause of action for the reason that it does not allege that notice of disability was given and proofs furnished, as provided in the policy. Where, as in this state, it is provided by statute that a compliance with a condition precedent may be pleaded generally, an allegation of performance made in accordance with the statute is sufficient to allege that notice and proofs of loss were duly given. [Sec. 807, R. S. 1929; Farmers Bank v. Assurance Co., 106 Mo. App. 114, 126, 127; McGannon v. Millers National Ins. Co., 171 Mo. 143, 154.] See, also, Colley's Briefs on Insurance, page 5820 (2 Ed.), and Missouri cases cited therein.

However, defendant claims that these authorities have no application to the case at bar for the reason that they involve executed contracts of insurance and not an executory contract, as defendant claims this policy of insurance to be because it is a renewal policy. In this connection defendant states: "such an executed policy contract is entirely different from an executory contract for illness indemnity, that manifestly the insurer must be in a position to investigate immediately upon notice." What defendant evidently means is that under the peculiar provisions of the policy in suit it must be put in a position to investigate whether the premium had been paid when the disability began, whether the contract had been in force thirty days and, if there had been a default in the payment of the premium, whether the disability had begun ten days after the date of the payment of the premium for the reinstatement of the contract. This argument might have some weight relative to the matter of the importance of giving timely notice of the disability, but we fail to see how it has any bearing on the question of pleading.

It is insisted that there is no proof that the premiums were paid that were due on September 18th and November 18th. It is admitted that plaintiff testified that he paid the first premium but it is said that he did not testify how he paid them, whether to the home office or an agent duly authorized to receive them, as the policy required them to be paid, and that he did not testify at all that the renewal premiums due September 18th and November 18th, were paid. Plaintiff testified that he paid the premiums "all the time," one time "at the main office." The inference is that at the other times he paid

the premiums to the agent. No effort was made by defendant to illicit what plaintiff meant by this testimony. Defendant's evidence shows that the policy was in force when this suit was filed. This evidence raises the inference that the premiums were paid. The record fairly shows that the issue of the payment of the premiums was not contested at the trial. [Davidson v. St. Louis Transit Co., 211 Mo 320, 356, 360.]

It is claimed that there is no showing that the first period of disability commenced after the expiration of thirty days from the date of the policy. In this connection defendant points to an ambiguous statement in the blank filled out by plaintiff's physician in connection with the notice of the claim made to defendant, which statement, defendant says, shows that the illness started on August 17th. No claim is made for any disability beginning prior to September 18th. However, if the date of the actual commencement of the illness is material, and defendant's construction of the physician's statement in the notice of disability is correct, still there is other positive testimony in the record that plaintiff's illness started on September 18th and the statement of the physician made in the notice is not conclusively binding upon plaintiff. [Stephens v. Met. Life Ins. Co., 190 Mo. App. 673.] Therefore, the court was at liberty to believe the statement of plaintiff that his illness started on September 18th.

At the conclusion of the testimony the court announced that it found from the evidence and that it was the court's judgment that plaintiff was entitled to recover a total sum of $366.67 and interest in the amount of $33.25 upon both claims; that upon the second claim plaintiff was entitled to recover the sum of $166.67, making the recovery for the first disability the sum of $200; that, as a penalty for non-payment of the second claim, plaintiff was entitled to recover the sum of $16.67 and $30 attorney's fees, making in all, as the court announced, the sum of $446.67, "for which amount the court renders judgment for the plaintiff and against the defendant" and the surety on the appeal bond. No penalty of ten per cent and attorney's fees were mentioned by the court in reference to the first claim.

The clerk did not write up the judgment as orally pronounced by the court and defendant attempts to take advantage of this error. The judgment, as entered by the clerk, recites that:

"After hearing the evidence the court finds for the plaintiff on the first count of the petition in the principal sum of $366.67, and interest in the sum of $33.25, making a total sum of $399.92. And the penalty for vexatious delay on the second count of the petition $16.67 and attorney's fee $30, making a total sum of $446, and the costs.

"Wherefore, it is ordered and adjudged by the court that plaintiff have and recover from defendant and his surety on the appeal bond herein, National Surety Company, the sum of four hundred and

forty-six dollars ($446), with interest thereon from this day at the rate of six per cent per annum, together with the costs of the cause, and that execution issue therefor.''

Defendant insists that the court had no jurisdiction to render judgment in the sum of $366.67, on the first count of the petition, as the sum sued for in that count was only $284.66, which included penalty and attorney's fees, and no judgment was rendered on that count for penalty or attorney's fees; that the court had no jurisdiction to render a judgment for interest upon the sum of $333.67, because it was not sued for or provided for in the policy; that the recovery of a penalty of ten per cent and attorney's fees for vexatious refusal to pay is ''in addition to and not minus or in the absence of the right to receive or recover the loss claimed,'' and that consequently, the judgment is erroneous in allowing a penalty of $16.67, and attorney's fees of $30, on the second count of the petition without a finding that plaintiff was entitled to recover for disability-under that count.

The judgment upon its face is undoubtedly erroneous but, as the bill of exceptions containing the oral pronouncement of the court of his judgment, signed and made a part of the record by the judge who tried the cause, Becher v. Deuser, 169 Mo. 159, 164, 165, contains sufficient upon which to correct *nunc pro tunc* the judgment, and to make its correction, by the trial court, mandatory had a motion been filed for that purpose, so as to provide a recovery of $200 for disability under the first count and $166.67, disability under the second count, together with a penalty of $16.67, and $30 attorney's fees under the second count, all of which are within the pleadings, the error in the judgment is not material, and we would not be authorized to reverse it for the error of the clerk in entering it. [Secs. 821, 1062, 1099, 1100, R. S. 1929.] Plaintiff has filed in this court a voluntary remittitur in the sum of $33.25, covering the item of interest. So we need not pass upon the question as to whether he was entitled to a judgment covering that item.

It is claimed that the finding of the court of a vexatious refusal to pay the indemnity covered by the second period of disability, is not supported by the testimony. In fact it is claimed that the court found that the refusal to pay for the second disability was not vexatious and in the face of this finding included this item in the judgment. The court commented upon the evidence extensively at the close of the testimony, stating that there was no evidence of vexatious refusal to pay for the first disability and then the following occurred:

''MR. LEVI: (Counsel for plaintiff). How about the second delay or refusal?

''THE COURT: The excuses for not paying the second one was, the excuse was on account he wouldn't accept the second until they paid the first one.

"MR. LEVI: There is no evidence of that, Your Honor.

"THE COURT: The penalty, under the statute, is ten per cent."

The truth of counsel's statement about the matter is borne out by the record and the court was evidently convinced of this when he subsequently announced his judgment. However, we cannot consider any voluntary finding of the court in the face of the recitals of the judgment. [Kansas City v. Boyer, supra.]

It is contended that there is no evidence of a vexatious refusal to pay for the second disability because notice of this disability was not properly given the defendant. The policy provided that "written notice of sickness on which claim may be based must be given to the Society within ten days after the commencement of disability from such sickness," and

"Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the Society at its Home Office, 320 Broadway, New York, or to any authorized agent of the Society with particulars sufficient to identify the insured, shall be deemed notice to the Society. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

Plaintiff testified that within ten days from the commencement of his illness, after November 27th, he called up the agent and told the latter that he was sick and to send him blank notices that he might make out to send to the company; that the agent did not "send them right away but in a couple of days he did send them. I filled them out and sent them to the company;" that when he filled out the blanks he mailed them to the company. The inference to be drawn from this testimony is that the agent agreed to furnish the blanks. The notice bears date of December 14, 1928. The statement of the witness that he asked for blanks, on which to make out the notice, within ten days after the commencement of his illness was in reply to a very leading question on the part of his attorney but no objection whatever was made to the question or answer. Defendant is in no position now to complain of the matter. However, in view of the witness' statement that the agent sent him the blanks in "a couple of days" after he asked for them and, as the notice was dated December 14, 1928, whereas, his illness commenced on November 27th, it is claimed that he did not ask for the blanks within the ten day period. In this connection it is said that plaintiff received the blank notice on December 14th, the day he filled it out and that he must have requested it two days before which would fix the request as made on December 12th, which was not within the ten day period.

The words "couple of days" do not carry a definite meaning. Immediately after plaintiff had testified that the blanks were sent in "a

couple of days" he was asked if it was not several days before he received the blanks and he replied, "Yes, sir." This clearly shows that the witness did not intend to make any definite statement as to the number of days which transpired after he made the request before the blanks were sent to him. It was for the court to believe or disbelieve the testimony of the witness that he asked for them within the ten day period and it is not denied that if he did and the agent delayed sending them, that the notice was given in time. [On this question see 14 R. C. L., pp. 1348, 1349.]

It is claimed that there was no vexatious refusal to pay for the second disability because defendant offered to pay for this disability and plaintiff refused to accept the offer.

Plaintiff testified that the agent of the company came to see him and brought a letter from the company and said that he was authorized to settle the case for "$25 or $50." It is impossible to discern from the record whether the witness testified that this offer was made to settle for the first or second disability. The record does not evidence any intention on the part of the plaintiff to contradict himself on this matter and he was evidently confused or did not pay sufficient attention to the questions asked him, for the reason that he first said that the offer was made between his first and second illness and, later, that defendant offered to pay him for his second illness and then immediately after that, he testified that he was not offered anything in payment of the second illness.

However, assuming as defendant contends, that the offer was to pay for the second disability, an offer to pay $25 or $50 is not a definite offer of any sum, and there is no contention that even $50 would cover the amount defendant owed plaintiff, if anything, for his second disability. The court found that he was entitled to $166.67, on this account. There is no question but that there was sufficient on which to base a judgment for penalty of ten per cent and attorney's fees upon the second count. From all the record shows the refusal to pay for the second disability was wholly arbitrary, defendant giving no reason therefor.

Additional matters, such as there is no testimony that plaintiff was disabled within the meaning of the policy more than fourteen days the second time and that no demand was ever made for payment for twenty-five days' disability on this occasion, are sought to be raised in the reply brief, but because they are for the first time raised in the reply brief they cannot be considered by us. [National Union Fire Ins. Co. v. Vermillion, 19 S. W. (2d) 776, 783; Ridenour v. Mines Co., 164 Mo. App. 576, 599.]

The judgment is affirmed in the sum of $412.75. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.